UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

ALEXIS G.[1],                           )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     CIVIL NO. 1:20cv143
                                        )
ANDREW M. SAUL,                         )
Commissioner of Social Security,        )
                                        )
          Defendant.                    )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for Disability
Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social
Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the
[Commissioner] shall file a certified copy of the transcript of the record including the evidence
upon which the findings and decision complained of are based.  The court shall have the power to
enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or
reversing the decision of the [Commissioner], with or without remanding the case for a
rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by
substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to
engage in any substantial gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2.      The claimant has not engaged in substantial gainful activity since August 29, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: bipolar disorder, anxiety, post traumatic stress disorder ("PTSD"), and alcohol use disorder (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no working at unprotected heights or around dangerous machinery, limited to simple routine work not done at a production rate pace, can interact with and react appropriately to coworkers and supervisors on an occasional basis but is limited to superficial interactions with the general public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 26, 1987 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 29, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr.  109-115).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff  filed his opening brief on December 6, 2020.  On February 16, 2021 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on March 3, 2021.  Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature

4

of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

Plaintiff was born in 1987 and was in the "younger age" category during the relevant period (AR 67). He graduated from high school in 2016 and attended some college (AR 240, 329-355). In the fall of 2006 Plaintiff attended college at Indiana University Fort Wayne but had low and failing grades (AR 331). He returned to college at Indiana Business College in 2009 but withdrew after one semester. (AR 329). Plaintiff attempted an online bachelor's degree in entertainment business through Full Sail University in 2011, but the university withdrew him due to non-attendance and failure to respond to the university's attempts to contact him (AR 240, 333-355).

Plaintiff worked for his grandfather's office supply business, Thurlow Cazier, Inc., between 2001 and 2009 and was in charge of general cleaning, taking lunch orders, and organization (AR 29-3130, 223-224). He worked about 3 hours each shift, and his grandfather was very accommodating to his health conditions including allowing Plaintiff to leave work early or take days off when needed (AR 29-30). The earnings history indicates Plaintiff worked for 24 other employers between 2006 and 2016 (AR 223-227). He worked the longest at United Parcel Service, Inc. (2010-2012) and East Noble School Corp. (2012-2013) (AR 225-226). His jobs typically ended after a very short periods of time (AR 32-33, 36-37). The vocational witness (VW) who testified at Plaintiff's hearing indicated his past jobs ranged between the semi-skilled to skilled level and were sedentary to light in exertion (AR 58-59).

On January 30, 2016 Plaintiff presented to Parkview's emergency department for evaluation of suicidal ideation, attempt, and depression (AR 400). On January 31 Plaintiff was admitted to Parkview Behavioral Health. Plaintiff was admitted on a voluntary basis after

5

experiencing suicidal thoughts and rehearsing how he would hang himself. He also sought help to treat what he believed to be undiagnosed bipolar disorder (AR 393). Plaintiff had been sober seven months prior to being admitted (AR 393). His mood was noted as depressed and he had limited social judgment. Dr. Kevin Murphy examined Plaintiff and noted that in order to function in a less restrictive setting, he needed to improve self-control, improve social and daily living skills, increase self-awareness, be more mindful of emotions and behaviors, reduce self-harm behaviors, identify barriers to change, and identify relapse triggers (AR 397). Dr. Murphy prescribed Lamictal 25 mg and Trazodone 100 mg (AR 390). Plaintiff was discharged from Parkview Behavioral Health on February 3, 2016 (AR 388).

Plaintiff presented to the Bowen Center for an initial assessment in February 2016 following his inpatient stay at Parkview Behavioral Health (AR 416). At the time of his initial assessment his current symptoms were anxiety/panic, depressed mood/persistent sadness, grief reaction, guilt feelings, hopelessness/helplessness, and relationship problems (AR 416). In October 2016 medications including Lamictal 100 mg and Vistaril 25 mg were prescribed (AR 425). At a follow up appointment in November 2016, Plaintiff's Vistaril was increased to 50 mg (AR 428). In December 2016, Plaintiff's Lamictal and Vistaril were continued and Wellbutrin 150 mg was added (AR 431). Plaintiff presented to the Bowen Center for individual therapy (AR 462).

In May 2018, Plaintiff presented to the Bowen Center for an updated psychiatric reevaluation with Michelle Para, NP under the supervision of Kishore Sriram, M.D. (AR 501-505). Plaintiff reported he had gone 13 months without drinking, but after his testicular removal surgery he was given hydrocodone which had caused him to start drinking again. Plaintiff stated that he gets into "lows" that last for a month, and his surgery triggered one of these lows

6

(AR 501). He had internal anger and when angry he gets quiet (AR 501). Lamictal was continued and he was instructed to stop Lorazepam and to start Buspar 5mg and Naltrexone 50mg (AR 504-505). His final diagnoses were bipolar disorder, generalized anxiety disorder, and alcohol dependence (AR 505). He was instructed to restart individual therapy with Megan Marsh, Psy.D. at the Bowen Center (AR 505).

On January 1, 2018, Plaintiff underwent a procedure at Dupont Hospital after experiencing left-sided testicular pain and swelling for 3 months (AR 473). A hydrocele was found on his left testicle with evidence of ischemia. Surgery was performed to remove a completely necrotic left testicle (AR 474). At a follow up appointment on January 4, 2019 Plaintiff rated his symptoms as a 7, and indicated hydrocodone helped his symptoms. He reported that he was experiencing anxiety, depression, and headaches (AR 470).

Plaintiff appeared with his attorney and testified at the ALJ hearing on July 31, 2018 (AR 13). His mother also appeared and testified as did a vocational witness, Scott Silver (AR 13). Plaintiff was not currently working, but he painted as a hobby and had sold a couple of paintings in the past months for around $50 each (AR 21).

When questioned why he could not work Plaintiff responded that he could not keep jobs due to anxiety that turned into anger and a "vicious cycle of depression as a result of the bipolar disorder" (AR 32-33). Plaintiff recounted his history of holding many jobs. He was last employed in 2016 at Auto Handling Corporation where he was responsible for sending vehicles on trains for delivery to different locations in the United States (AR 24). He noted that he was having a lot of depression and anxiety while at the job (AR 25). He recalled an instance when he had sent vehicles to Mexico when they were supposed to go to Boston (AR 25). He was put on a probationary

period and after that was given the option to resign or be fired (AR 25-26). He left the job after ending up in an argument with his boss who eventually wanted Plaintiff to come back to work (AR 25).

Plaintiff was currently being treated at the Bowen Center (AR 34). He had received treatment at the Bowen Center for around 2 years at the time of the hearing and indicated that he had a gap in treatment due to a hydrocele that prevented him from getting out and doing things (AR 34). He took Lamictal for his mood disorder which helped take away the manic episodes of his bipolar disorder but did not help with anxiety and depression (AR 34-35). He was being seen twice a month for therapy sessions and was also meeting with a doctor for medication management once every couple of months (AR 35).

Plaintiff attended Alcoholics Anonymous meetings and was not using alcohol or any illegal or prescription drugs that were not prescribed to him at the time of his hearing (AR 35, 37-38). Plaintiff's most recent relapse was on July 11, 2018 and was the result of depression and anxiety leading up to his hearing as well as the loss of his testicle (AR 39-40). He was also in a lot of pain from the hydrocele and loss of his testicle and was using alcohol to help decrease his pain levels (AR 39). In the past three years he had around five consecutive, short-lived alcohol binges (AR 40). The longest he had gone without drinking was ten months and prior to that it had been nine months. (AR 40). Plaintiff testified he did not drink during most of 2016 (AR 41-42). He previously put himself in the Thirteen Step House to abstain from alcohol and learn the tools he needed to maintain sobriety (AR 41).

Plaintiff indicated he used alcohol as a coping mechanism to help eliminate his anxiety. When he stopped drinking, he used painting as a replacement to help deal with his with anxiety

and depression (AR 24, 49). Some recent jobs, which he held when not drinking, ended quickly due to depression and anxiety (AR 42). He noted he was drinking quite heavily while working at some of the jobs he maintained for longer periods (AR 42).

Plaintiff testified that he had trouble getting along with people in authority and that being supervised caused him a lot of anxiety (AR 46). He disliked not being in control and had many instances where he had gotten into fights with supervisors at almost every job he had held (AR 46-47). He reached a point where he was unable to work because alcohol wasn't "curing it anymore," and he got to a point where he felt like suicide or "working on his brain" were his only two choices (AR 48).

At the time of the hearing Plaintiff was living in a house with his mother, father, and younger sister and had resided there for the past two years (AR 42-43). He had lived with his grandfather and a girlfriend in the past (AR 43). On a typical day, Plaintiff would wake up, drink coffee, go outside to smoke and then work on a painting for about 20 minutes (AR 44). After that he watched movies or looked at photos of artwork or photography on social media to help him "stay out of [his] head" (AR 44). He often forgot to shower, and his mother typically made food for him, though he sometimes cooked (AR 44-45). He had trouble paying attention when driving and was forgetful about wearing a seatbelt (AR 45).

Plaintiff's mother also testified at the hearing and stated that Plaintiff was threatening suicide when he initially moved back home. His family took him to a behavioral health facility (AR 51-52). She also recalled that he had another instance of suicidal thoughts after living with a girlfriend and was taken to Parkview Behavioral Health (AR 52). Plaintiff's mother reported her son did not get out of the house much and did not leave his room very much (AR 53-54). He

needed reminders to shower, and she prepared meals for him and thought he would get very thin if she did not prepare his meals (AR 55).

In support of remand, Plaintiff first argues that the ALJ erred in evaluating the medical opinion evidence.  An ALJ must give controlling weight to a medical opinion of a treating acceptable medical source if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If controlling weight is not given, an ALJ "must offer good reasons for discounting a treating physician's opinion" that are supported by substantial evidence. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted). When an ALJ gives "good reasons" for not giving controlling weight to a treating physician's opinion, the opinion still has value in the disability determination and the ALJ must apply the regulatory factors to determine what lesser weight to afford the opinion. *Id.* at 308; *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)-(6).

Plaintiff argues that the October 2018 opinion submitted by Megan Marsh, Psy.D., a psychologist with the Bowen Center who saw Plaintiff for eight therapy sessions, paints a very different picture of Plaintiff's mental impairments and his ability to function in the workplace than does the ALJ decision (AR 513-525). Dr. Marsh indicated that Plaintiff suffered from Bipolar I Disorder, most recent episode depressed with anxious distress (AR 519). She noted that she had seen him in eight sessions since October 21, 2016 but that she did not see him for "regular treatment".  Plaintiff's diagnosis coupled with extenuating circumstances made attending treatment consistently difficult. *Id.*  Dr. Marsh explained that Plaintiff's bipolar symptoms would be expected to worsen if he returned to work and that he would be expected to miss more than three days of

work a month and be able to remain on task to perform simple work less than 70% of the time (AR 516-517, 519-521). The ALJ acknowledged that Dr. Marsh was a treating source and stated that he gave her opinion "partial weight" (AR 113).

Plaintiff contends that the ALJ failed to properly evaluate Dr. Marsh's opinion under the regulatory factors in 20 C.F.R. 404.1527 to decide whether her medical opinion was entitled to controlling weight. Plaintiff argues that he ALJ never reviewed the applicable factors for deciding whether Dr. Marsh's opinion was entitled to controlling weight. Plaintiff notes that a review of the opinion demonstrates that Dr. Marsh provided a detailed and thorough explanation for her opinions and that she identified supportive medical findings (AR 519-521). Plaintiff claims that Dr. Marsh's opinions are not inconsistent with other substantial evidence in the case record and that the opinions from non-examining state agency psychologists do not suffice as substantial evidence to reject an examining physician opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Plaintiff also points out that the state agency reviewers did not provide specific opinions about absences and "off task" behavior (AR 67-75, 79-89).

Plaintiff further argues that even if the ALJ had correctly determined that Dr. Marsh's opinions were not entitled to controlling weight, the ALJ decision lacks a legally sufficient and factually supported analysis of the opinion under the test applicable to all medical opinions. 20 C.F.R. § 404.1527. The ALJ was required to address the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to give the opinion. *Campbell*, 627 F.3d at 308; *Scrogham*, 765 F.3d at 697-98 & n.48 (indicating that the ALJ's failure to address the appropriate regulatory factors was not harmless). In lieu of engaging in the analysis required by the regulations, the ALJ simply acknowledged that Dr. Marsh was a treating source and noted that she had only seen Plaintiff on

11

eight occasions over two years. (AR 113). The ALJ was seemingly concerned about Dr. Marsh's opinion that Plaintiff's symptoms would be present in the absence of alcohol consumption (AR 113, 520-521). Plaintiff argues, however, that even if he functioned better when not drinking, that does not contradict the opinion that his symptoms would be present in the absence of alcohol. There is also no opinion in this case, including from the state agency psychological consultants, that alcohol was a material contributing factor to Plaintiff's disability.

ALJs are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined him." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *see also Vanprooyen v. Berryhill*, 864 F.3d 567, 572-73 (7th Cir. 2017) (finding error where without any logical explanation, the administrative law judge gave substantial weight to the opinions of consulting physicians who had never examined [the plaintiff], saying only that they had provided a good synopsis of the evidence and that their opinions are consistent with the overall record). In the present case, the ALJ did not explain why the state agency psychological consultants' opinions were entitled to greater weight than Dr. Marsh's opinion when those consultants never examined or treated Plaintiff. Plaintiff points out that Dr. Marsh's opinion reflects a more accurate consideration of Plaintiff's work history in connection with his mental impairments (AR 520). Dr. Marsh reported that Plaintiff was diagnosed with Bipolar I disorder with anxious distress and explained that when Plaintiff is anxious, he struggles to be around others or in enclosed spaces and that he experienced symptoms congruent with panic attacks. *Id*. She also noted that anxiety makes it difficult to focus and triggers a "fight or flight response." *Id*.

Plaintiff argues that the ALJ did not create a logical bridge connecting the facts/factors he

listed with the "partial weight" conclusion, nor did he explain what parts of Dr. Marsh's opinion were deserving of weight or how he incorporated Dr. Marsh's findings in the RFC assessment. Plaintiff contends that he ALJ's RFC and symptom evaluation reflect an overall failure to fairly evaluate the opinion and incorporate it into the assessment of Plaintiff's RFC. Plaintiff suggests that the ALJ believed that he better understood the medical evidence and Plaintiff's condition than did the treating psychologist. However, it is impermissible for the ALJ to substitute his opinion for that of the medical professional. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[A]dministrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . .. Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009)(warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion").

In response, the Commissioner has failed to identify how the ALJ complied with the regulatory requirements, including engaging in a rational application of the checklist factors described in 20 C.F.R. § 404.1527 for considering medical opinions that are not afforded controlling weight. Rather, the Commissioner relies on generic assertions about the "resolution of evidentiary conflicts" being with the "exclusive domain" of the ALJ, and the ALJ's need to only "minimally articulate" reasons for the weight afforded to opinions.

The Commissioner acknowledges that the ALJ "largely relied" on the opinions of the state agency psychological consultants (Drs. Johnson and Larsen). However, the ALJ merely assigned "great weight" without citing evidence or providing a rationale aside from a general assertion that the agency determination was "consistent with the evidence, including the relatively little treatment

since the alleged onset date and improvement when the claimant is in treatment" (AR 113). The Commissioner then identifies evidence which he claims supports the "great weight" afforded to the state agency consultants' opinions. This is a violation of the *Chenery* doctrine because the ALJ never cited this evidence in the one sentence paragraph "weighing" the state agency psychological consultants' opinions. Moreover, as noted above, bipolar disorder is characterized by fluctuating moods and the severity of Plaintiff's mental illness is not contradicted by the some of the normal behaviors and observations during office visits, so this is not a "good reason" for discounting Dr. Marsh's opinion.

The Commissioner claims the ALJ "properly discounted" Dr. Marsh's opinions because, as the ALJ noted, Dr. Marsh had seen Plaintiff "only eight times in two years" which was not at "the frequency that would be accepted medical practice". However, the non-examining state agency psychological consultants, whose opinions the ALJ afforded "great weight," never saw or examined Plaintiff at all. The Regulations also recognize that inconsistent treatment or lack of compliance with treatment is a feature of some mental disorders and will not necessarily be used as evidence to support a finding that an individual has not received "ongoing medical treatment" as described in the mental impairment listings. *See* 20 C.F.R. § 404 Subpt. P, App'x 1, § 12.00G. The Seventh Circuit has also recognized that mental disorders, and particularly bipolar disorder, may prevent the sufferer from taking prescribed medication or otherwise submitting to treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006). Dr. Marsh also explained Plaintiff's extenuating circumstances and noted that "individuals with Bipolar I tend to not attend therapy when they are in the midst of a manic episode, which Plaintiff experiences frequently" (AR 519).

As noted above, there was no medical opinion finding that alcohol was a material and

14

contributing factor to Plaintiff's disability. The ALJ never performed the requisite drug and alcohol materiality determination under SSR 13-2p and thus cannot discount a supportive treating source medical opinion on the basis of DAA (Drug Addiction or Alcoholism) and skirt the analysis under SSR 13-2p. The Seventh Circuit has also recognized that bipolar can precipitate substance abuse as a means by which the sufferer tries to alleviate symptoms. *See id.* at 629-31. Like in *Kangail*, Dr. Marsh described Plaintiff's use of alcohol as a form of self-medication, albeit an unsuccessful coping mechanism (AR 520).

Accordingly, as the ALJ failed to properly consider the medical opinions, as required by the Regulations, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ erred in his consideration of the symptom reports submitted by Plaintiff and his mother.  An ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." SSR 16-3p. Under SSR 16-3p, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p. An individual's statements about the intensity and persistence of the pain may not be disregarded simply because they are not substantiated by objective medical evidence. SSR 16-3p. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;
(ii) Location, duration, frequency, and intensity of pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) Type, dosage, effectiveness, and side effects of any medication;
(v) Treatment, other than medication, for relief of pain or other symptoms;
(vi) Other measures taken to relieve pain or other symptoms;
(vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). In assessing Plaintiff's subjective symptoms the ALJ indicated:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

(AR 112). Plaintiff points out that the ALJ's statement and presumption that symptoms need to be "entirely consistent" with the objective medical and other evidence is contrary to the governing regulations. *Ralston v. Saul*, No. 3:18-cv-996-PPS; *Minger v. Berryhill*, 307 F. Supp. 3d 865, 872-73 (N.D. Ill. 2018); *Farley v. Berryhill*, 314 F. Supp. 3d 941, 946 (N.D. Ill. 2018); *Bacolita v. Berryhill*, 2018 WL 2731227, at *4 (N.D. Ill. June 7, 2018). Social Security Regulations explain how ALJs are supposed to evaluate a claimant's symptoms. "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).

The ALJ stated that the symptom testimony and reports of Plaintiff and his mother were not supported by the "objective medical evidence." In this regard, the ALJ cited evidence from the Bowen Center notes between October 2016 and May 2018 indicating that Plaintiff's symptoms were improved. The ALJ held that a gap in treatment and the lack of more frequent of treatment undermined the symptom testimony (AR 113). Plaintiff notes that the ALJ did not consider the

reasons for the lack of more treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."); *see also Paul*, 760 F. App'x at 465; *Butler-Jones v. Berryhill*, No.: 1:17-CV-140-TLS, 2018 WL 948477, at *5 (N.D. Ind. Feb. 20, 2018). As noted, Dr. Marsh explained that individuals with Bipolar I disorder tend to not attend therapy when they are in the midst of manic episodes, which Plaintiff has frequently experienced (AR 519). She also noted that Plaintiff has demonstrated poor attendance at work and in therapy due to depressive symptom and that those symptoms adversely impact work performance (AR 519).

Plaintiff argues that the ALJ failed to consider that "improvement" in symptoms was in the context of Plaintiff no longer facing the demands of work stress, and that the ALJ did not properly consider the aggravating factors under 20 C.F.R. § 404.1529(c)(3)(iii). Dr. Marsh with the Bowen Center reported that Plaintiff's condition would be expected to worsen if he were working full-time and that the "demands and stress of being in the work-force have shown repeatedly to exacerbate [Plaintiff's] symptoms." (AR 520). Dr. Marsh added that when participating in the workforce Plaintiff's manic episodes and subsequent depressive episodes have led to dangerous consequences including financial difficulties, strained interpersonal relationship, legal issues, and excessive substance use. *Id*. Plaintiff also notes that the ALJ  improperly failed to sufficiently consider Plaintiff's work history and inability to keep jobs in considering Plaintiff's symptoms.

Even though Plaintiff did better while not working and receiving treatment, the Bowen Center still adjusted Plaintiff's medications to control his symptoms suggesting his symptoms were not fully controlled. In October 2016 the Bowen Center reported that Plaintiff's mood swings,

depression, and anxiety were "not controlled" (AR 425). In December 2016, even though symptoms were reported as "improved" and "controlled," the Bowen Center increased the dosage of Vistaril to 50 mg twice a day  and started Wellbutrin 150 mg for three days and then increased the frequency to twice a day in addition to continuing Lamictal (AR 431). To the extent there was some improvement with treatment, "improvement" by itself does not demonstrate a lack of disabling symptoms. *Salazar v. Colvin,* No. 13 C 9230, 2015 U.S. Dist. LEXIS 142219, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015. The Bowen Center records from May 2018 indicate Plaintiff's condition worsened again following a removal of his testicle which precipitated alcohol abuse and worsening depression (AR 501-505).

Plaintiff reiterates that bipolar disorder is characterized by fluctuating moods and the severity of Plaintiff's mental illness is not contradicted by the some of the normal behaviors and observations during office visits. *Id.*; *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (a snapshot of any single moment of a claimant's mental illness says little about their overall condition); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The Seventh Circuit has also recognized that bipolar can precipitate substance abuse as a means by which the sufferer tries to alleviate symptom. *See Kangail*, 454 F.3d at 629.

This Court agrees with Plaintiff that the ALJ improperly analyzed the Plaintiff's subjective symptoms, warranting remand on this issue.

Next, Plaintiff argues that the ALJ erred at Step Five in assessing Plaintiff's mental RFC and in formulating the corresponding hypothetical to the vocational expert.  The RFC is an assessment of what work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1). In evaluating

a claimant's RFC, an ALJ is expected to take into consideration all the relevant evidence, including

both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to SSA

regulations:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in
> the case record were considered and resolved.

SSR 96-8p.

In the present case, Plaintiff argues that the ALJ's mental RFC assessment was inconsistent

with the "great weight" he assigned to the opinions of the state agency psychological consultants'

opinions. (AR 113). Plaintiff further contends that the RFC assessment is also unsupported

because the ALJ erred in considering the reports of functioning and symptom testimony from

Plaintiff and his mother and in weighing the opinion evidence from Dr. Marsh. Plaintiff thus

concludes that because the RFC assessment and corresponding hypothetical to the vocational

expert were flawed and did not account for all of Plaintiff's limitations, the ALJ's step five finding

is not supported by substantial evidence. *See Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir.

2018).

In rating the severity of Plaintiff's mental impairments and assessing his mental RFC, the

ALJ afforded "great weight" to the "state agency determination" because it was "consistent with

the evidence" (AR 113). In June and August 2017, state agency psychological consultants, Drs.

19

Johnson and Larsen, evaluated Plaintiff's mental impairments applying the Psychiatric Review Technique described in 20 C.F.R. § 404.1520a. The state agency psychological consultants considered Plaintiff's impairments under listings 12.04 (Depressive, bipolar, and related disorders) and 12.15 (Trauma and stressor-related disorders). Under the functional "B" criteria of the mental impairment listings, they assessed moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; and (3) maintaining concentration persistence, or pace (AR 70-74). In rating Plaintiff's mental abilities, the psychologists determined that Plaintiff's mental abilities were moderately limited the following areas:

(1) carry out detailed instructions;
(2)  maintain attention and concentration for extended periods;
(3)  interact appropriately with the general public;
(4) accept instructions and respond appropriately to criticism from supervisors; and
(5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes

(AR 73-74). In the narrative discussion of the mental RFC, Drs. Johnson and Larsen concluded that Plaintiff had the ability to understand, remember, and carry out simple instructions with work involving brief, superficial interactions with coworkers, supervisors, and the public, and could sustain attention and concentration to carry out work-like tasks with reasonable pace and persistence (AR 74-75). The ALJ assigned "great weight" to the opinions from these psychologists.

After finding Plaintiff's severe mental impairments were bipolar disorder, anxiety, post-traumatic stress disorder (PTSD), and alcohol use disorder (AR 109), the ALJ incorporated the following mental limitations in his residual functional capacity finding and hypothetical to the VE:

20

(1) perform simple work not done at a production rate pace;
(2) interact and react appropriately to coworkers and supervisors on an occasional basis;
   and
(3) interact superficially with the general public.

(AR 59).

Plaintiff argues that the ALJ's mental RFC assessment omits a potentially work-preclusive limitation found by the state agency psychological consultants who determined Plaintiff was restricted to work that involved "brief, superficial interactions [with] fellow workers, supervisors, and the public" (AR 74, 98). The ALJ's mental RFC assessment permitted interaction with supervisors and co-workers on an "occasional" basis which translates to interaction with others for up to 138 minutes per day (7 hours x 60 minutes x .33). Plaintiff argues that permitting "occasional interaction" provides no assurance that the interactions will be "brief." Plaintiff also notes that the ALJ also failed to address the quality of the interaction Plaintiff could tolerate with supervisors and coworkers despite the state agency psychological consultants' determination that the interaction could only be "superficial." Regarding interaction with the public, the ALJ limited Plaintiff to "superficial" interaction but failed to include any restriction on the amount of time he could interact with the public. This too is inconsistent with the state agency psychological consultants' finding that Plaintiff could only tolerate "brief" and "superficial" interaction with the public.

Plaintiff further argues that the ALJ failed to build an accurate and logical bridge between the evidence and the RFC assessment. The ALJ noted Plaintiff's testimony that he did not like being supervised because he did not like "not being in control" and that he got into fights at work (AR 110), but cited to exams noting that Plaintiff was cooperative, polite, and had good eye

contact and information within function reports at Exhibits 3E and 4E indicating that Plaintiff could go out alone and attend AA meetings. *Id*. The ALJ did not explain how the observations of being polite, cooperative, and having good eye contact during brief medical appointments undermined the reports and opinions about Plaintiff's difficulties interacting with supervisors and coworkers in the context of a work setting.

Likewise, the ALJ did not explain how the ability to go out alone or attend or AA meetings translated into the ability to interact occasionally with supervisors and co-workers in a full-time work setting up to one-third of the time and interact with the public throughout a workday so long as the interactions were "superficial."

Plaintiff argues that the ALJ's RFC assessment for performing simple work not done at a production rate pace also fails to account for Plaintiff's moderate limitations in concentration, persistence, or pace limitation, including the moderate restrictions in maintaining attention and concentration for extended periods as assessed by the state agency psychological consultants. The Seventh Circuit has repeatedly held that limiting a claimant to simple, routine, or repetitive tasks is not sufficient to account for difficulties in concentration, persistence, or pace. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (rejecting argument that hypothetical limiting claimant to simple work instructions and to routine, low-stress work accommodated moderate limitations in concentration, persistence or pace); *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *Young*, 362 F.3d at 1004.

Plaintiff points out that his work history with repeated job losses demonstrates his inability to keep and stick with jobs. The ALJ did not discuss the evidence demonstrating that over the

nearly 10 year period between 2006 and 2016 Plaintiff worked for 24 different employers. (AR 223-227). The Seventh Circuit has recognized that "[w]here it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Kangail v. Barnhart*, 454 F.3d 627, 629, quoting *Gatliff v. Comm'r of the SSA*, 172 F.3d 690, 696 (9th Cir. 1999). The state agency psychological consultants, whose opinions the ALJ adopted, also failed to address Plaintiff's work history including many short-term jobs. *See Miller v. Colvin*, No.: 3:13-CV-380 JD, 2014 U.S. Dist. LEXIS 114935, at *39-40 (N.D. Ind. Aug. 19, 2014) (finding it was error for the ALJ to omit discussion of evidence favoring the claimant including his employment history consisting of over 35 unskilled jobs which didn't last long and in "rel[ying] so heavily on the state agents' opinions without explaining how these opinions were affected by the agents' erroneous belief that Miller had at one time held the same job for seven years").

Dr. Marsh, who treated Plaintiff through the Bowen Center, provided a detailed explanation regarding Plaintiff's mental impairments and functioning (AR 515-525). Her opinion, which the ALJ rejected, supports greater limitations than the ALJ assessed. Dr. Marsh opined that Plaintiff would have trouble maintaining attention and concentration during an 8- hour workday to perform unskilled work, and she estimated that he could remain on task less than 70% of the day and that he would be absent more than 3 days per month (AR 516-517, 520-521). The vocational expert who testified at Plaintiff's hearing indicated that a person could not be "off task" more than 10% of a workday and that missing over one day per month during the first 30 to 90 days of employment would be work preclusive (AR 60-61).

As the RFC assessment is not supported by substantial evidence, remand is required.

23

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 9, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court